UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED
OCT 27 2005

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 05-30033 (01) |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER |
| JOSE RASCON-ARMENDARIZ, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant filed a motion to suppress evidence and statements (Doc. 19). U.S. Magistrate Judge Moreno conducted an evidentiary hearing on July 1, 2005, and filed and served a report and recommendation for disposition of the motion (Doc. 31). The Court has conducted a *de novo* review of the transcript of the hearing (Doc. 30), the transcript of the findings made on the record by the magistrate (Doc. 33), and all the files and records herein. Defendant has filed objections (Doc. 32) to the recommendation of the magistrate and said objections have been considered as well.

## BACKGROUND

On March 21, 2005, defendant was driving his 1997 Ford pickup on Highway 183 in northern Tripp County, South Dakota. Due to snowy road conditions, defendant was involved in a one vehicle accident in which his pickup rolled on its side. Tripp County Deputy Sheriff Shawn Petit ("Petit") arrived at the scene of the accident and had defendant sit in his patrol vehicle.

Despite the accident and the condition of the vehicle, defendant was adamant about getting back on the road to continue his trip. Prior to the tow truck arriving, he asked Petit to help him flip the vehicle over, a physical task that was obviously beyond the capabilities of the two men. Once the tow truck arrived and was able to place the vehicle back on all four wheels, defendant continued to insist that he be allowed to continue to travel. Petit refused to allow him to continue on his trip. Petit testified that, in addition to the poor weather and road conditions, there were two reasons that he did not allow defendant to continue. First, he claimed he needed

to inventory the vehicle because he did not know the damage to the vehicle. This claim is frivolous. South Dakota has no motor vehicle inspection law. There is nothing to indicate that Petit would have any expertise in inspections. There is also no legal authority to insist on such an inspection. Second, he believed he had enough probable cause to hold the vehicle. Petit later testified that the purpose of towing the truck into the auto body shop was to make it easier for a dog to sniff it in an indoor location, rather than outdoors in the snow.

The pickup truck sustained various minor damages as a result of the accident. Nonetheless, despite defendant's objection, Petit had defendant's truck towed to Brent's Body and Glass in Winner, South Dakota. Defendant was not ticketed or placed under arrest for any driving offense or for any other reason. Petit took the defendant to the Dakota Inn in Winner and "put him up for the night" in a motel room. Defendant was, in effect, separated from his vehicle for the evening against his will.

Petit testified that, whenever a vehicle is towed, it is inventoried, including when a vehicle has been in an accident or has broken down on the highway. Although the claimed purpose of towing the vehicle to the shop was to inventory it, once at the auto shop, Petit immediately called another law enforcement officer, Jerry Fisher ("Fisher"). Fisher is a K-9 officer and he brought with him a drug detection dog. At the shop, the dog was allowed to walk around the perimeter of the pickup. The dog alerted at the back side of the truck. A search was conducted of the dresser that was in the rear of the truck. A false bottom was discovered. Inside the false bottom were shrink-wrapped packages that were glued in with yellow insulation foam. There were approximately 30 packages. Petit opened one of the packages and it contained a green leafy substance which smelled of marijuana. The packages were later weighed and tested positive for 102 pounds of marijuana.

After the search of the truck, defendant was retrieved from the motel, placed under arrest, and taken to the Winner City Jail. On March 22, 2005, defendant was interrogated by agents Andrew de la Rocha and Jeff Metzinger. Defendant was advised of his *Miranda* rights and made incriminating statements admitting to the marijuana. An indictment was filed against defendant on April 20, 2005, charging him with one count of possession with intent to distribute marijuana.

2

## DISCUSSION

The Fourth Amendment guarantees "[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." Under the Fourth Amendment's exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of an illegal search or seizure. Weeks v. United States, 232 U.S. 383 (1914). "(W)hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . ." Cooper v. California, 386 U.S. 58, 59 (1967). Defendant moves for various reasons for the suppression of the marijuana found in the dresser in the bed of defendant's truck.

It is worth noting that there are two facets of the Fourth Amendment at work here: its protection against unreasonable *searches* and its protection against unreasonable *seizures*. As the Eighth Circuit Court of Appeals has recently explained:

> [T]he Supreme Court has recognized the Search Clause is wholly distinct from the Seizure Clause, such that courts applying these clauses must understand they provide different protections against government conduct. *See Segura v. United States,* 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) ( "Different interests are implicated by a seizure than by a search."). According to the Supreme Court, a Fourth Amendment *search* "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). On the other hand, a Fourth Amendment *seizure* of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen,* 466 U.S. at 113, 104 S.Ct. 1652.

United States v. Va Lerie, No. 03-3394, 2005 WL 2417657 (8th Cir. Oct. 3, 2005).

Defendant first claims that Petit illegally seized defendant and his truck. In essence, this question boils down to whether Petit lawfully impounded the defendant's truck and lawfully forced defendant into a motel room following the minor accident. "[P]olice may exercise discretion to impound a vehicle, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)). This impoundment was not incident to arrest. The defendant committed no violations of law in operating his vehicle and was not ticketed. Instead, in this case, the vehicle was impounded, at least ostensibly, because of the damage sustained in a one car roll-

3

over accident caused by poor weather conditions and Petit's desire to investigate further. Clearly, where a vehicle has sustained damage significant enough to present a danger to its operator or other travelers, law enforcement may be entitled to take the vehicle into custody. As the Supreme Court has observed:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," Cady v. Dombrowski, supra, 413 U.S. at 441, 93 S.Ct. at 2528, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities . . . The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

South Dakota v. Opperman, 428 U.S. 364, 368 (1976).

In this instance, defendant's truck was involved in an accident and was very slightly damaged. One rear view mirror was broken off and was seen laying in the back seat of the vehicle. The driver's side rear window was broken out. Following the accident, the tow truck driver was able to drive it out of the ditch and onto the highway. The truck was operable. Any damage not readily apparent to those at the scene was not such that it prevented the vehicle from operating. It is clear that, given the state of the defendant's vehicle as it was pushed upright and driven out of the ditch, the defendant could have just as easily driven the vehicle to the nearest town to arrange for repairs if he wished to do so. He was not in need of a tow. Contrary to the magistrate's decision, the defendant did not violate any state laws by operating the vehicle without a rearview mirror. See SDCL 32-15-8 (requiring that a driver have a mirror providing the driver with "a view of the highway for a distance of at least two hundred feet to the rear of such vehicle . . ." but not specifying that a rearview mirror is required). Nor is more than one mirror required.

Nonetheless, Petit decided to have the vehicle towed to Brent's Body and Glass in Winner, South Dakota. He testified that he did not know the damage to the vehicle and wanted to have it inventoried. Petit also testified that it is the policy of the Tripp County sheriff's office to inventory all vehicles that are towed. To be constitutional, a warrantless inventory search must be done pursuant to standard police procedures and for the purpose of protecting the vehicle

4

and its contents. United States v. Betterton, 417 F.3d 826, 830 (8th Cir. 2005), and United States v. Best, 135 F.3d 1223, 1225 (8th Cir. 1998).

Notwithstanding Petit's testimony that he was concerned about the damage to the vehicle, it is clear from the record that Petit's real motivation for impounding the vehicle was investigatory. Any claimed reliance on possible unseen damage to the vehicle would have been purely speculative and unreasonable. Petit testified that he believed he had probable cause to search the vehicle. He also testified that he wanted to take the vehicle to the auto shop in order to effectuate a canine sniff indoors, rather than out in the snow on the side of the road.

The presence of an investigatory motive does not necessarily invalidate an otherwise valid inventory search. *See e.g.* United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999), and United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993) *cert. denied*, 511 U.S. 1111. In other cases, where a valid inventory is conducted, the presence of an investigatory motive may be more innocuous. However, in this case, the evidence is clear that the motive was strictly investigatory. There is no evidence that the pickup's contents were actually inventoried. Nor was any inspection done for damage to the vehicle. A drug dog was summoned as soon as the vehicle arrived at the shop. This is not a part of standard inventory procedure and does not serve any of the purposes of a vehicle inventory, namely

> the protection of the owner's property while it remains in police custody, *United States v. Mitchell*, 458 F.2d 960, 961 (9th Cir. 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar*, 470 F.2d 176, 178 (5th Cir. 1972); and the protection of the police from potential danger, *Cooper v. California*, supra, 386 U.S., at 61-62, 87 S.Ct., at 790.

Opperman, 428 U.S. at 369.

The magistrate's conclusion that this was not a valid inventory search was correct and should be adopted. This is not a situation where law enforcement impounded the defendant's vehicle for safekeeping after he was arrested. He was not under arrest for anything. Moreover, under the facts here present, the government cannot rely on speculation and conjecture regarding the safety of the defendant's vehicle to justify interference with the defendant's possessory interest in his vehicle. To the best of Petit's knowledge based on what was objectively observed at the scene, the vehicle, although slightly damaged, was fully operable and presented no danger to anyone. Petit's true impetus for towing the vehicle was his desire to investigate further.

5

Not every governmental interference with a person's property constitutes a seizure of that property under the Constitution. However, under the facts of this case, where the defendant was relegated to a motel room while Petit had his car impounded, it is clear that a seizure of property occurred. The defendant was completely deprived of his possessory interest in his vehicle. In this regard, the question presented here can be narrowed to whether Petit was justified in seizing the defendant's vehicle for investigatory reasons. There is no question that Petit seized the defendant's vehicle without a warrant. When law enforcement has probable cause to seize an automobile, it may be seized without a warrant under the "automobile exception" to the warrant requirement. United States v. Sims, No. 05-1166, 2005 WL 2417654 (8th Cir. Oct. 3, 2005), Chambers v. Maroney, 399 U.S. 42, 51 (1970), and United States v. Hill, 91 F.3d 1064, 1070 (8th Cir. 1996). Moreover, where a warrantless at-the-scene search of a vehicle would be permissible, officers may instead seize the vehicle and search it later. Chambers, 399 U.S. at 51-52.

In U.S. Magistrate Judge Moreno's findings vis-a-vis probable cause, he relies first on the canine sniff. The dog sniff is not an appropriate consideration, as the sniff occurred *after* the officer had made the decision to seize the vehicle for investigatory purposes and had seized it. The appropriate consideration is first whether the officer had probable cause to seize the vehicle based upon what he had observed on the roadside.

In this regard, there were various factors relied upon by the officer to support his belief that he had probable cause to seize and search the vehicle. The defendant was driving a vehicle that belonged to an unidentified friend. The defendant had a New Mexico driver's license and was driving a vehicle with Minnesota license plates. Despite the bad weather, the defendant was adamant about continuing on in a slightly damaged vehicle. The defendant made inconsistent statements about moving his family from New Mexico to St. Paul, Minnesota. The defendant's vehicle cab smelled of a strong odor of perfume or cologne, and he was in possession of a number of unopened air fresheners. Certainly, as to any contraband outside the cab, the cologne and air fresheners (unopened) would mean nothing. According to Petit, defendant appeared nervous and was sweating, even though it was snowing out. The defendant possessed two cell phones, which Petit testified is consistent with drug trafficking, as one can be used solely to

6

communicate with the recipient of the drugs and the other for personal calls. Finally, the defendant's old dresser was the only piece of furniture he was hauling and it did not budge despite a rollover accident.

The probable cause question is a close one here. Clearly, the most suspicious circumstance was the presence of a sole, worn dresser that did not budge despite a rollover accident. Beyond that, many of the factors relied upon by the magistrate are not particularly persuasive. The Court places no weight as to Petit's testimony concerning the defendant's travel route from New Mexico to Minnesota.[1] It is one of many ways the trip could have been accomplished. Likewise, the fact that the defendant's driver's license and license plates did not match is consistent with a recent relocation. The defendant was very anxious to continue on his trip and appeared nervous and was sweating, despite the snowy weather. However, the defendant had just been involved in an accident where his truck was turned on one side. He had just escaped personal injuries and would have been concerned about even minor damages to the vehicle. All of this would naturally evoke a certain amount of anxiety. The cologne smell or perfume could well have been the result of being jostled by the accident, and unopened air fresheners are not covering up anything and mean nothing. The possession of more than one cell phone is becoming less and less of an anomaly, as it is often commonplace for business travelers to carry one for business use, often provided by their employer, and one for personal use.

The automobile exception requires that law enforcement have probable cause to believe that the vehicle contains contraband before it is seized. Probable cause did not exist to seize this vehicle and the decision to impound the vehicle and investigate further was not reasonable under the circumstances. The seizure was unreasonable. The Court also finds that defendant was "detained" in a motel room while the officers exercised dominion over his vehicle.

---

[1] Petit testified that the defendant was traveling between known "drug hubs." Defendant disputes that he said he was traveling from *Albuquerque*, New Mexico, as the officer testified at the suppression hearing. Rather, he claims that he told the officer he was traveling from New Mexico, without any reference to a particular city. In any event, nearly every major city in the United States is regarded as a "drug hub" by law enforcement. This observation adds nothing to the probable cause determination.

7

Defendant moves to suppress his statements made to law enforcement on March 22, 2005, because they constitute the fruit of an illegal seizure of defendant and his truck, and the subsequent search of the truck. Defendant further argues that, but for the illegal seizure of defendant and his vehicle, followed by the subsequent search of the truck, defendant would not have been arrested, and thus, would not have made the incriminating statements. The advisement of *Miranda* warnings does not purge the taint of the Fourth Amendment violations. Brown v. Illinois, 422 U.S. 590 (1975). The defendant's statements to law enforcement must be suppressed under Wong Sun v. United States, 371 U.S. 471 (1963).

## ORDER

IT IS ORDERED:

(1) The motion for suppression of evidence, Doc. 19, is granted.

(2) The objections, Doc. 32, of the defendant are, as set forth above, sustained.

(3) The Court adopts the report and recommendations, Doc. 31, in part and rejects the same in part as set forth above.

Dated this 26th day of October, 2005.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *[signature]*
DEPUTY
(SEAL)

8